# Illinois Official Reports

## Appellate Court

---

### *Smith v. American Heartland Insurance Co.*, 2017 IL App (1st) 161144

---

| | |
|---|---|
| Appellate Court Caption | NANCY SMITH, Plaintiff and Counterdefendant-Appellee, v. AMERICAN HEARTLAND INSURANCE COMPANY, and OCTAVIA PEARSON, Defendants and Counterplaintiffs-Appellants. |
| District & No. | First District, First Division<br>Docket No. 1-16-1144 |
| Filed | February 6, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-10715; the Hon. Kathleen M. Pantle, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Shelist Law Firm LLC, of Chicago (Samuel A. Shelist, of counsel), for appellants.<br><br>Topper & Weiss, Ltd., of Chicago (Barry Weiss, of counsel), for appellee. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Connors and Justice Mikva concurred in the judgment and opinion. |

**OPINION**

¶ 1 This is an appeal regarding insurance coverage and the notice clause of an uninsured motorist provision contained within the policy. Plaintiff and counterdefendant-appellee, Nancy Smith, was a passenger in an automobile involved in a hit-and-run accident where the other vehicle could not be identified because it fled the scene. The owner of the vehicle Smith rode in had a split insurance policy. One company insured the collision portion, and defendant/counterplaintiff-appellant, American Heartland Insurance Company (hereinafter "Heartland"), insured the liability portion. Heartland denied her claim based on the failure to comply with the notification requirement found in the hit-and-run coverage, and Smith filed this declaratory judgment action.

¶ 2 After conducting discovery, both parties moved for summary judgment. Heartland argued it was undisputed that Smith failed to provide written notification of her claim within 120 days of the accident as required by the policy. In her motion for summary judgment, Smith argued her notice was reasonable under the circumstances and, alternatively, the notice provision violated the public policy of Illinois. The circuit court denied both motions after concluding there were genuine issues of material fact that needed to be resolved and proceeded to trial. After trial, the court concluded that it could not enforce the 120-day provision because it "may" violate the public policy of Illinois. The circuit court concluded that the standard to be applied was whether notice was reasonable. Based on the testimony and evidence before it, the court entered judgment for Smith, finding her notice to be reasonable.

¶ 3 On appeal, Heartland argues that (1) the circuit court erred in denying its motion for summary judgment, (2) the circuit court erred in finding the 120-day notice provision ambiguous and applying reasonableness factors to find notice timely, and (3) the notice provision does not violate the public policy of Illinois. For the reasons set forth below, we affirm the circuit court in denying summary judgment and proceeding to trial. We find that the notice provision is not ambiguous; however, despite this, we conclude the reasonableness factors found in *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 313 (2006), represent suitable guidelines in determining whether a notice provision violates public policy. We conclude that, when applied to the facts and circumstances of this case, the notice provision violates the public policy of Illinois regarding uninsured motorist benefits. Accordingly, we affirm the entry of judgment in favor of Smith.

¶ 4                                     JURISDICTION

¶ 5 On March 25, 2016, the circuit court entered a final judgment in favor of Nancy Smith and against American Heartland Insurance and Octavia Pearson. On April 22, 2016, defendants filed their notice of appeal. Accordingly, this court has jurisdiction over this matter pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 301 and 303. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 6                                     BACKGROUND

¶ 7 On March 1, 2010, Octavia Pearson (hereinafter "the insured") was driving her car with Smith and Derrick Rodgers as passengers when it was struck by a hit-and-run driver in Chicago, Illinois. The insured obtained her insurance policy through an insurance broker doing

business as "Insure On The Spot." The insurance provided to her was in the form of a split policy with two insurance companies providing different coverage. American Freedom Insurance Company provided comprehensive/collision coverage, while Heartland provided liability coverage and the uninsured motorist coverage at issue in this case. At the time of the accident, the insured had not received any insurance policy and only had her insurance card from Insure On The Spot.

¶ 8    At the scene of the collision, the insured called the police, who arrived shortly thereafter and prepared a police report of the incident. The police report listed the insured's insurance company as Insure On The Spot. Following her interaction with the police, the insured called Insure On The Spot. The insurance card the insured possessed displayed both insurance companies but did not state which insurance company issued the comprehensive/collision coverage or the liability/uninsured motorist coverage.

¶ 9    On March 2, 2010, Smith went to a hospital emergency room and initiated treatment for injuries she alleged were caused by the March 1, 2010, accident. Thereafter, Smith retained the services of attorneys, and based on the information Smith alleged she obtained from the insured, her attorney sent an attorney's lien and notice to American Freedom Insurance Company on March 8, 2010. Receiving no response, on June 29, 2010, a second notice was sent to American Freedom. On July 9, 2010, Smith's attorney was notified by American Freedom that it carried only comprehensive/collision on the insured's vehicle and that liability coverage was written by Heartland.

¶ 10   On July 9, 2010, Smith's counsel, Barry Weiss, reported by telephone to Heartland that Smith claimed she was injured in the March 1 accident. The insured gave a telephone statement to Heartland on July 16, 2010, that a hit-and-run accident had occurred. On September 9, 2010, Smith's attorney sent a letter to Heartland, informing it of Smith's uninsured motorist claim. In a letter dated September 14, 2010, Juliette Driscoll, a claims adjuster for Heartland, requested that Smith's counsel provide Heartland with Smith's medical damages.

¶ 11   On February 11, 2011, Heartland sent Smith's attorney a letter, denying her uninsured motorist claim, because the written notice of her claim was not sent within 120 days of the incident as stated in the insured's policy. After receipt of the denial, Smith filed this declaratory judgment action against Heartland and the insured, seeking an order that Heartland was obligated to cover her claim. The parties then conducted discovery, and each party eventually filed motions for summary judgment. On March 24, 2014, the circuit court ruled that there were genuine issues of material fact that precluded entering summary judgment for either party.

¶ 12   The circuit court then held a trial on March 25, 2016, where both sides presented testimony and evidence to the court. However, there is no record of what occurred at this proceeding. The parties acknowledge that no court reporter was present, no bystander's report has been filed, and the record does not contain any of the evidence presented at trial. The court issued its ruling on the same day and found in favor of Smith. On April 1, 2016, the court read its ruling and reasoning into the record. The circuit court stated that it found the 120-day notice provision was unenforceable and instead applied the reasonableness factors found in *Country Mutual*, 222 Ill. 2d at 313. It concluded that, based on the evidence before it, Smith's notice was reasonable and entered judgment in her favor.

¶ 13    Heartland timely filed its notice of appeal.

¶ 14                                    ANALYSIS

¶ 15    Heartland argues the following on appeal: (1) the circuit court erred in denying its motion for summary judgment; (2) the circuit court erred in finding the 120-day notice provision ambiguous and applying the reasonableness factors; and (3) the notice provision does not violate the public policy of Illinois.

¶ 16    Heartland argues for reversal of the circuit court's order denying its summary judgment motion because it was undisputed that Smith failed to provide written notice of the accident within 120 days of its occurrence. Smith responds that this court lacks the jurisdiction to review the denial of Heartland's motion for summary judgment because Heartland failed to appeal the order in its notice of appeal and, additionally, the denial merged with the circuit court's order following the trial on March 25, 2016.

¶ 17    "A notice of appeal is a procedural device filed with the trial court that, when timely filed, vests jurisdiction in the appellate court in order to permit review of the judgment such that it may be affirmed, reversed or modified." *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 173 (2011). Illinois Supreme Court Rule 303(b)(2) provides that the notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." Ill. S. Ct. R. 303(b)(2) (eff. May 30, 2008). Because the filing of a notice of appeal is the jurisdictional step that initiates appellate review, the reviewing court has no jurisdiction unless there is a properly filed notice of appeal. *People v. Smith*, 228 Ill. 2d 95, 104 (2008). However, a notice of appeal should be liberally construed and considered as a whole. *Id.* at 104-05. The notice of appeal informs the prevailing party in the trial court that the other party seeks review of the judgment and is sufficient to confer jurisdiction on an appellate court when it fairly and adequately sets out the judgment complained of and the relief sought. *Id.* An appellant's failure to comply with the form of the notice is not fatal when the deficiency is one of form, rather than substance, and the appellee is not prejudiced. *Id.*

¶ 18    The notice of appeal, no matter how this court construes it, does not fairly and adequately set out the March 24, 2014, order denying Heartland's summary judgment motion as an order being appealed. The notice of appeal states that the judgment appealed from is the March 25, 2016, order and the relief sought is the "reversal of the judgment in favor of Plaintiff Nancy Smith." This notice did not inform Smith that Heartland was appealing the March 24, 2014, order and therefore failed to confer jurisdiction on this court to consider the summary judgment order.

¶ 19    Moreover, even if Heartland had included the order in its notice, the merger doctrine would prevent our review of it. "The denial of a motion for summary judgment is not reviewable on appeal because the result of such denial merges with the trial that follows." *Paulson v. Suson*, 97 Ill. App. 3d 326, 328 (1981) (citing *Casson v. Nash*, 54 Ill. App. 3d 783 (1977)). In this case, a trial was held on March 25, 2016, where at least three witnesses testified and both parties presented evidence to the circuit court. Even if properly appealed, the denial of Heartland's summary judgment motion would not be reviewable. Accordingly, we find that the court's denial of summary judgment and proceeding to trial was proper.

¶ 20    Next, Heartland argues that the circuit court erred in finding the hit-and-run timing requirement of the notice provision to be unenforceable and instead applying the reasonableness factors found in *Country Mutual*, 222 Ill. 2d at 313. Further, Heartland argues

- 4 -

that the timing requirement does not violate the public policy of Illinois regarding uninsured motorist claims.

¶ 21    Initially, the parties disagree on the standard of review applicable to our review of this issue. Heartland argues a *de novo* standard of review should apply because the circuit court ruled the 120-day notice provision violated public policy and was unenforceable. See *Country Preferred Insurance Co. v. Whitehead*, 2012 IL 113365, ¶ 27 (stating whether an insurance policy is invalid because it violates public policy is reviewed *de novo*). However, Smith argues that because the circuit court heard testimony, we should apply the more deferential manifest weight of the evidence standard. See *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 185 (2010) (timeliness of an insured's notice is a question of fact and should only be reversed when such a finding is against the manifest weight of the evidence). We agree with Heartland that a *de novo* standard applies.

¶ 22    In finding for Smith, the circuit court concluded that the 120-day notice provision contained within the policy issued by Heartland could not be enforced because "it may be contrary to public policy." The court then went on to state that it believed the law only required notice to be reasonable and that based on the evidence before it, Smith's notice to Heartland was reasonable. Despite the use of the term "may" it is apparent the circuit court believed it could not enforce the 120-day notice provision because it was against public policy. Accordingly, a *de novo* standard is proper. *Country Preferred Insurance Co.*, 2012 IL 113365, ¶ 27; *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 54 (2011).

¶ 23    Heartland contends that the circuit court erred in using the factors found in *Country Mutual* because the timing provision of the notice requirement is not ambiguous. 222 Ill. 2d at 313. The primary objective when construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). An insurance policy, like any other contract, must be construed as a whole, giving effect to every provision. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004); *Country Mutual*, 222 Ill. 2d at 311.

¶ 24    "Whether an ambiguity exists turns on whether the policy language is subject to more than one reasonable interpretation." *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). Unambiguous words in the policy are to be given their plain, ordinary, and popular meaning. *Country Mutual*, 222 Ill. 2d at 311.

¶ 25    The insurance policy issued by Heartland to the insured contains notice requirements regarding uninsured motorist claims in two different places. In Part II (Uninsured Motorist Coverage), the definitions section states:

> " 'hit-and-run motor vehicle' means a motor vehicle which hits or causes an object to hit the insured or an automobile which the insured is occupying at the time of the accident which causes bodily injury to an insured, provided,
>
>     (a) there cannot be ascertained the identity of either the operator or the owner of such 'hit-and-run motor vehicle';
>
>     (b) the insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace, or judicial officer, to the Commissioner of Motor Vehicles, and shall have filed with the company within 120 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising

out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and

(c) at the Company's request, the insured or his legal representative makes available for inspection the motor vehicle which the insured was occupying at the time of the accident…"

The Conditions section of the policy states "unless otherwise noted, conditions apply to all Parts" and contains a "Notice" provision. The "Notice" provision states in relevant part:

"In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identity the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and address of the injured and of available witnesses, shall be given by or for the insured to the Company as soon as practicable. However, in the case of a 'hit and run' claim under Part II, notice must be given to the Company in writing within 120 days of the accident. A suit seeking recovery against the Company under Part II must be filed within two years of the accident; this condition does not enlarge the notice provision in Part II Uninsured Motorist Coverage Definitions—'Hit & Run Motor Vehicle.' "

¶ 26    Heartland is correct that there is nothing ambiguous about this timing requirement. Both notice provisions clearly and unambiguously require notice within 120 days of the accident. The cases cited by the parties show that before engaging in an analysis using those factors, reviewing courts have found the timing requirement in the notice provision at issue to be ambiguous. The notice provision in each case states an insurer must be given written notice "as soon as practicable," an obviously ambiguous timeframe. *Country Mutual*, 222 Ill. 2d at 311; *West American Insurance Co.*, 238 Ill. 2d at 185; *Barrington Consolidated High School v. American Insurance Co.*, 58 Ill. 2d 278, 281 (1974); *American Home Assurance Co. v. City of Granite City*, 59 Ill. App. 3d 656, 658-59 (1978); *Sowinski v. Ramey*, 36 Ill. App. 3d 690, 694 (1976); *Kenworthy v. Bituminous Casualty Corp.*, 28 Ill. App. 3d 546, 548 (1975). Courts had interpreted this ambiguous phrase to mean " 'within a reasonable time.' " *Country Mutual*, 222 Ill. 2d at 311 (quoting *Barrington Consolidated High School*, 58 Ill. 2d at 282). Notwithstanding the *Country Mutual* factors being applicable to ambiguous notice provisions, we conclude that the *Country Mutual* factors represent appropriate guidelines to aid courts in determining whether a notice provision at issue violates public policy, and the circuit court did not err by utilizing them below.

¶ 27    Smith does not dispute that she failed to give written notice to Heartland within the 120 days required under the notice provision but argues that the timing requirement violates the public policy of Illinois based on the facts of this case. Smith points out insurance agreements represent more than just a private agreement between the insured and the insurer. *M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492, 500-01 (1977). Public policy considerations underlying insurance contracts seek to afford protection to members of the public, generally innocent third parties. *Id. Heartland* argues that Illinois courts have long recognized insurance policy notice provisions impose valid prerequisites to insurance coverage. *Country Mutual,* 222 Ill. 2d at 311; *Barrington Consolidated High School*, 58 Ill. 2d at 281.

¶ 28    In deciding whether a provision within an insurance agreement violates public policy, we must determine whether the agreement is so capable of producing harm that its enforcement would be contrary to the public interest. *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 54 (2009). An agreement will not be invalidated unless it is clearly contrary to what the

constitution, the statutes, or the decisions of the courts have declared to be the public policy of Illinois or unless it is manifestly injurious to the public welfare. *Id.* at 55. Whether an insurance provision violates public policy depends on the particular facts and circumstances of the case. *Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc.*, 181 Ill. 2d 214, 226 (1998).

¶ 29    In Illinois, the general rule is that when an insurer attempts to place limits on the uninsured motorist provisions of its insurance policy, the limitations must be construed in favor of the policyholder and strongly against the insurer. *Hartford Accident & Indemnity Co. v. LeJeune*, 114 Ill. 2d 54, 59 (1986). Section 143a of the Illinois Insurance Code (215 ILCS 5/143a (West 2014)) specifically requires an insurer to provide uninsured motorist coverage which extends to individuals who may be entitled to recover from persons who own and operate uninsured motor vehicles. *Severs v. Country Mutual Insurance Co.*, 89 Ill. 2d 515, 518 (1982). The purpose of this statute is to place the injured party in substantially the same position had the uninsured driver carried the minimum required liability insurance. 215 ILCS 5/143a (West 2014). Importantly, although the 120-day provision in the insured's policy limits the time within which notification of a claim must be made, section 143a does not state a limit as to when an uninsured motorist claim may be brought. *Id.*; *Severs*, 89 Ill. 2d at 518-19. Moreover, our supreme court has held that the purpose underlying this statute "cannot be circumvented by the insertion of a contrary or restricting provision in an insurance policy." *Severs*, 89 Ill. 2d at 520.

¶ 30    We note that on the day of this incident Heartland's policy had yet to be delivered to the insured. The insured had only an insurance card, which set out the names of two insurance companies without indicating which company was the liability/uninsured carrier. We will not hold Smith accountable to have greater knowledge than did the insured as to who was the liability carrier. Based on the facts and circumstances surrounding this case, including the admissions of Heartland in its answer to Smith's complaint, a strict enforcement of the 120-day notice provision contained in Heartland's policy circumvents the uninsured motorist statutes, violates public policy, and is therefore void and unenforceable as applied to Smith, an innocent third party. In arguing for reversal, and upholding the 120-day requirement, Heartland focuses a great deal of attention on the argument that the 120-day requirement is necessary to prevent fraudulent claims and its notice provision is in furtherance of that goal. *State Farm Mutual Automobile Insurance Co. v. Benedetto*, 2015 IL App (1st) 141521, ¶ 13. That argument does not help Heartland here. Smith's claim has never been alleged to be fraudulent; denying her claim will in no way prevent fraudulent claims from being filed. In answering Smith's complaint, Heartland admitted that it knew the accident on March 1, 2010, was a hit-and-run with an unidentified driver.

¶ 31    Heartland also takes issue with the fact that Smith is not listed on the police report made by the attending officer, creating suspicion as to Smith's injuries. However, Heartland also admitted in its answer that Smith was a passenger in a vehicle owned by its insured when the accident occurred. Furthermore, the nature and extent of Smith's injuries is not an issue in this proceeding.

¶ 32    Heartland also argues such a timing requirement is needed to allow a timely inspection of the car. However, based on the facts and circumstances of this case, this argument is also flawed. Smith is not the insured or the owner of the vehicle. She could not turn over the vehicle even if she wanted to because it belonged to Octavia Pearson. Additionally, Heartland sold a

split policy in which it was insuring only the liability part of the policy. A sophisticated insurance company selling a split policy should recognize that it is entirely possible that an insured may make a claim with his or her collision carrier and may never contact the insurer covering the liability portion. That is exactly what happened here—Octavia Pearson made a claim with American Freedom, her collision carrier, who promptly fixed the car. Octavia Pearson did not need nor was she required to contact Heartland. Accordingly, we find Heartland's contention that timely notice prevented the inspection of the automobile at issue to be without merit.

¶ 33     Finally, we note that had Smith known the identity of the hit-and-run driver, she would have had two years pursuant to the Illinois personal injury statute of limitation to seek her recovery, not 120 days as determined by Heartland and its policy. 735 ILCS 5/13-202 (West 2014).

¶ 34     Heartland's reliance on *Vala v. Pacific Insurance Co.*, 296 Ill. App. 3d 968 (1998), for the proposition that Illinois courts have approved of shorter notification periods is unpersuasive. The insurance policy at issue in *Vala* was not an automobile policy but a commercial building policy, so the same policy considerations are not implicated. *Id.* at 969. Additionally, it was not argued, and the court did not examine, whether the 60-day notification provision violated public policy. *Id.*

¶ 35     Based on the above, the 120-day notice provision Heartland seeks to enforce against Smith is a dilution or diminution of the uninsured motorist statute and is therefore against public policy as applied to her. *Moses v. Coronet Insurance Co.*, 192 Ill. App. 3d 921, 925-26 (1989); *Burgo v. Illinois Farmers Insurance Co.*, 8 Ill. App. 3d 259, 264 (1972); *Hartford Accident & Indemnity Co. v. Holada*, 127 Ill. App. 2d 472, 482 (1970). Accordingly, we affirm the entry of judgment in favor of Smith, and her claim for uninsured motorist benefits should proceed to arbitration. See *Redland Insurance Co. v. Lerner*, 356 Ill. App. 3d 94, 98 (2005) (allowing a reviewing court to affirm for any reason appearing in the record).

¶ 36                                   CONCLUSION

¶ 37     For the reasons set forth above, we affirm the order of the circuit court entering judgment in favor of Smith and against Heartland and Pearson.

¶ 38     Affirmed.